NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
PAUL B. GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
JASMIN YANG (Cal. Bar No. 255254)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0805
    Facsimile: (213) 894-7819
    E-mail: Paul.Green@usdoj.gov
         Jasmin.Yang@usdoj.gov

Attorneys for Defendants
U.S. Department of Homeland Security;
U.S. Immigration and Customs Enforcement;
Chad R. Wolf; and Matthew Albence

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| Z.W., *et al.*,<br><br>       Plaintiffs,<br><br>       v.<br><br>U.S. DEPARTMENT OF<br>HOMELAND SECURITY, *et al.*,<br><br>       Defendants. | No. 8:20-CV-01220 CJC (KESx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND OPPOSITION TO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Proposed Order lodged concurrently]**<br><br>Hearing Date:   August 24, 2020[1]<br>Hearing Time:  1:30 p.m.<br>Ctrm:         9B<br>Hon.          Cormac J. Carney |

---

[1] Defendants have noticed a hearing for August 24, 2020, in compliance with the Local Rules, in the event the Court requires a hearing. (*See* ECF No. 42.)

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on August 24, 2020 at 1:30 p.m., or as soon thereafter as the Court may order if the Court finds a hearing to be necessary[2], Defendants U.S. Department of Homeland Security; U.S. Immigration and Customs Enforcement; Chad R. Wolf, Acting Secretary, U.S. Department of Homeland Security; and Matthew Albence, Acting Director, U.S. Immigration and Customs Enforcement will, and hereby do, oppose the application for temporary restraining order and move this Court for an order dismissing this action. This motion will be made in the Ronald Reagan Federal Building and Courthouse before the Honorable Cormac J. Carney, United States District Judge, in his courtroom, located at 411 West Fourth Street, Santa Ana, CA 92701.

Defendants submit this opposition and bring this motion because the application for temporary restraining order ("TRO Application") and the Complaint are moot. The government agreed to rescind the July 6, 2020 guidance and the related July 7, 2020 Frequently Asked Questions ("FAQs"), and both have been deleted from ICE's website, (*see* https://www.ice.gov/coronavirus). The rescission of the July 6 guidance and the July 7 FAQs moots the sole basis for the relief sought in the TRO Application and the Complaint.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

---

[2] The parties initially proposed that a hearing take place on August 3, 2020. (ECF No. 35.) On July 20, 2020, the Court entered an order setting a briefing schedule and stating, "After the briefing has been completed, the Court will schedule a hearing if necessary." (ECF No. 42.) As such, Defendants have noticed a hearing for August 24, 2020, should the Court require oral argument.

1

1    This motion is made following the conference of counsel pursuant to Local Rule

2    7-3 which was held on July 14 and 15, 2020.

3

4    Dated: July 23, 2020                    Respectfully submitted,

5                                            NICOLA T. HANNA
                                             United States Attorney
6                                            DAVID M. HARRIS
                                             Assistant United States Attorney
7                                            Chief, Civil Division
                                             JOANNE S. OSINOFF
8                                            Assistant United States Attorney
                                             Chief, General Civil Section
9

10                                              */s/ Paul B. Green*
11                                           PAUL B. GREEN
                                             JASMIN YANG
12                                           Assistant United States Attorneys

13                                           Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

DESCRIPTION                                                                              PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................. 1

      A.    The Visa Program for Nonimmigrant Students. ........................................ 1

      B.    COVID-19. ................................................................................................. 4

      C.    SEVP Broadcast Messages/Guidance. ...................................................... 4

      D.    The Rescinded July 6 Guidance and July 7 FAQs. ................................... 7

      E.    The Rescission Of The July 6 Guidance. .................................................. 8

      F.    Interested Parties' Response To The Rescission Of The July 6
            Guidance. ................................................................................................... 9

      G.    TRO Application Filed After The Rescission Of The July 6
            Guidance. ................................................................................................. 11

III.  LEGAL STANDARDS ....................................................................................... 11

      A.    Standard For Temporary Restraining Order. ........................................... 11

      B.    Standard For Dismissal. ........................................................................... 12

IV.   ARGUMENT ...................................................................................................... 12

      A.    Plaintiffs Are Not Entitled To A Temporary Restraining Order. ............ 12

            1.    Plaintiffs Fail To Establish A Likelihood Of Success On The
                  Merits. ........................................................................................... 12

            2.    Plaintiffs Are Not Likely To Suffer Irreparable Harm In The
                  Absence Of Preliminary Relief. ................................................... 14

            3.    The Balance Of Equities And The Public Interest Do Not
                  Favor Plaintiffs. ............................................................................ 15

      B.    Plaintiffs' Claims Are Moot In Light Of The Rescission Of The July
            6 Guidance Thus Necessitating Dismissal Of The Action. ...................... 17

V.    CONCLUSION ................................................................................................... 17

i

# TABLE OF AUTHORITIES

<u>DESCRIPTION</u>                                                                                                 <u>PAGE</u>

**Cases**

*Abdala v. INS*,
  488 F.3d 1061 (9th Cir. 2007) ...................................................................... 12

*Am. Bus. Ass'n v. United States*,
  627 F.2d 525 (D.C. Cir. 1980) ..................................................................... 13

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
  750 F.2d 1470 (9th Cir. 1985) ..................................................................... 14

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
  126 F.3d 1118 (9th Cir. 1997) ............................................................... 13, 17

*Arizona v. United States*,
  567 U.S. 387 (2012) ...................................................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 12

*Ashcroft v. Mattis*,
  431 U.S. 171 (1977) ...................................................................................... 13

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990) ....................................................................... 12

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*,
  941 F.3d 1195 (9th Cir. 2019) ..................................................................... 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 12

*Blackie's House of Beef, Inc. v. Castillo*,
  659 F.2d 1211 (D.C. Cir. 1981) ................................................................... 15

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) .................................................................. 14, 15

*Church of Scientology v. United States,*
  506 U.S. 9 (1992) .................................................................................................. 12

*Fla. EB5 Investments, LLC v. Wolf,*
  --- F. Supp. 3d. ---, 2020 WL 1079181 (D.D.C. Mar. 6, 2020) .................................. 16

*Habetler v. Burwell,*
  667 F. App'x 633 (9th Cir. 2016) ........................................................................... 13

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
  896 F.2d 1542 (9th Cir. 1990) ............................................................................... 12

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.,*
  736 F.3d 1239 (9th Cir. 2013) ............................................................................... 14

*Hollingsworth v. Perry,*
  570 U.S. 693 (2013) .............................................................................................. 12

*Innovation Law Lab v. McAleenan,*
  924 F.3d 503 (9th Cir. 2019) ................................................................................. 16

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,*
  434 U.S. 1345 (1977) ............................................................................................ 16

*Nken v. Holder,*
  556 U.S. 418 (2009) .............................................................................................. 15

*Northwest Envtl. Def. Ctr. v. Gordon,*
  849 F.2d 1241 (9th Cir. 1988) ............................................................................... 12

*United States v. Martinez-Fuerte,*
  428 U.S. 543 (1976) .............................................................................................. 15

*United States v. Verdin,*
  243 F.3d 1174 (9th Cir. 2001) ............................................................................... 12

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ........................................................................................ 11, 14, 15

**Statutes**

5 U.S.C. § 553(b)(A) ...................................................................................... 13

8 U.S.C. § 1101(f) ........................................................................................... 1

8 U.S.C. § 1184 ............................................................................................... 1

8 U.S.C. § 1103(a) .......................................................................................... 16

Pub. L. No. 104-208 ....................................................................................... 1

Pub. L. No. 107-56 .......................................................................................... 2

Pub. L. No. 107-173 ........................................................................................ 2

**Rules**

Federal Rule of Civil Procedure 4(i)(1) .......................................................... 11

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 12

**Regulations**

8 C.F.R. § 214.2(f) ..................................................................................... 1, 3, 5

8 C.F.R. § 214.2(m) .................................................................................... 1, 3, 5

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs are non-citizen law and graduate students enrolled at the University of California at Irvine, the University of Southern California, and the University of California at Los Angeles, present in the United States on student visas. Through the Complaint (ECF No. 1) and TRO Application (ECF No. 16, amended at ECF No. 36), Plaintiffs seek rescission of guidance issued by Defendant Immigration and Customs Enforcement ("ICE") on July 6, 2020 regarding the eligibility of international students taking only online classes for student visas. On July 14, 2020, the government agreed to rescind the July 6 guidance. On July 15, 2020, ICE removed the July 6 guidance and the July 7 FAQs from its website. That guidance is the only basis for the relief sought by the Plaintiffs. Therefore, the rescission of the July 6 guidance renders all of Plaintiffs' claims moot. For this reason, Plaintiffs cannot establish a likelihood of success on the merits of their claims, the TRO Application should be denied, and the action should be dismissed.

## II.   FACTUAL BACKGROUND

### A.   The Visa Program for Nonimmigrant Students.

Nonimmigrants who are admitted to the United States under a F-1 or M-1 visa are subject to the requirements set forth in 8 U.S.C. § 1101(f), (m) and 8 U.S.C. § 1184. *See also* 8 C.F.R. § 214.2(f), (m). A nonimmigrant who does not abide by the terms of his or her nonimmigrant status may be removable under INA § 237(a)(1)(C)(i), 8 U.S.C. § 1227(a)(1)(C)(i) for having "failed to maintain the nonimmigrant status . . . or to comply with the conditions of such status." Federal law requires the U.S. Department of Homeland Security ("DHS") to track and monitor U.S. educational institutions that enroll nonimmigrant students, as well as the students while they reside in the United States in an F or M nonimmigrant status. Section 641 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")[3] authorized the creation of a

---

[3] Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (Sept. 30, 1996).

1

program to collect current and ongoing information provided by schools and exchange visitor programs regarding F, M, and J nonimmigrants during the course of their stay in the United States. IIRIRA further authorized DHS to certify schools participating in F or M student enrollment. DHS carries out these obligations through ICE's Student and Exchange Visitor Program ("SEVP"), which administers the Student and Exchange Visitor Information System ("SEVIS").

Over the past two decades, Congress has repeatedly stressed the importance of monitoring nonimmigrant students noting national security concerns.[4] A solely online program of study provides a nonimmigrant student with the ability to be present anywhere in the United States for up to an entire academic term, whether that location has been reported to the government, which is contrary to several Congressional directives mandating the close and constant tracking of nonimmigrant students while they are in the United States. Additionally, fully online programs raise concerns that such programs would likely facilitate a nonimmigrant student's participation in activities other than full-time study, which undermines the purpose of the F-1 nonimmigrant visa. There has been, and continues to be, a clear intent in the regulations governing nonimmigrant students that such students continue to meet the Congressionally-mandated requirements to be considered F nonimmigrant students, including that such students sought "to enter the United States temporarily and *solely for the purpose* of pursuing… a course of study." 8 U.S.C. § 1101(a)(15)(F)(i). For context, there were over 1.5 million active records for F-1 and M-1 nonimmigrant students in SEVIS for calendar year 2018.[5]

---

[4] *See, e.g.*, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA PATRIOT Act) of 2001, Pub. L. No. 107-56 (Oct. 26, 2001); Enhanced Border Security and Visa Entry Reform Act of 2002, Pub. L. No. 107-173, § 501 (May 14, 2002).

[5] *See* https://www.ice.gov/news/releases/sevp-releases-2018-report-nonimmigrant-students-us#wcmsurvey-%20target-id (last visited on July 23, 2020).

Significantly, the Enhanced Border Security and Visa Entry Reform Act of 2002 instituted a two-year recertification process for all SEVP certified schools requiring them to demonstrate compliance with recordkeeping and reporting requirements relating to schools and nonimmigrant students. These statutes and their requirements demonstrate clear Congressional intent that ICE closely monitor schools and students through SEVIS and vigorously enforce all regulatory requirements.

Federal regulations promulgated in accordance with these authorities set forth the conditions of F and M nonimmigrant status, which require the fulltime pursuit of a course of study. *See* 8 C.F.R. § 214.2(f)(5), (m)(5) (discussing maintenance of a "full course of study" as a requirement to maintain nonimmigrant status). The regulations also provide, however, that most F-1 nonimmigrant students may take "no more than the equivalent of one class or three credits per session, term, semester, trimester, or quarter" online or through distance education as part of the full course of study requirement. *Id*. § 214.2(f)(6)(i)(G). F-1 students in a language study program and M-1 students may count no online or distance education courses toward a full course of study. 8 C.F.R. § 214.2(f)(6)(i)(G), (m)(9)(v). So, significantly, while some students are not permitted to take any online study, no nonimmigrant student may exceed the regulatory limit prescribed by § 214.2(f)(6)(i)(G).

Ensuring compliance with these requirements is shared by U.S. Department of State (issuing F-1 and M-1 nonimmigrant student visas and administering the J-1 program), U.S. Customs and Border Protection (admission), and ICE, specifically the SEVP. SEVP provides approval and oversight to schools authorized to enroll F and M nonimmigrant students and gives guidance to both schools and students about the nonimmigrant student regulatory requirements. SEVP is part of the National Security Investigations Division and acts as a bridge for government organizations that have an interest in information on nonimmigrants whose primary reason for coming to the United States is to study.

**B.      COVID-19.**

ICE, in coordination with DHS and other federal, state, and local agencies has implemented a variety of programs, including altered enforcement priorities and adapted agency policies and practices, in response to the unprecedented global pandemic of the novel coronavirus 2019 ("COVID-19"). The goals of these adaptations are to ensure safety of the public and help detect and slow the spread of the virus. ICE recognizes this is a fluid situation and provides updates on https://www.ice.gov/coronavirus  to provide the public notice of these policies as they relate to multiple facets of ICE operations.

**C.      SEVP Broadcast Messages/Guidance.**

At issue in this case is the July 6, 2020 guidance notifying schools and nonimmigrant students of how ICE would exercise its discretion beginning in the fall of 2020 in light of the impact of COVID-19 on educational institutions. *See* ECF No. 20-3, Ex. C (July 6 guidance).[6] The July 6 guidance, which has been rescinded, was one of a series of discretionary actions taken by SEVP in response to the COVID-19 pandemic.

Beginning on January 29, 2020, SEVP issued a broadcast message regarding the potential impact of COVID-19 on F and M nonimmigrant students. *See* Broadcast Message: 2019 Novel Coronavirus and F and M nonimmigrants (Jan. 29, 2020).[7] The broadcast focused on international travel and permissible reductions of courses if medically authorized. *Id*. The broadcast also reminded schools of flexibilities already built into the federal regulations to address various needs of nonimmigrant students in light of COVID-19. *Id*. The January guidance allowed for impacted parties to submit comments to the broadcast message and stated that it "is not a substitute for applicable legal requirements, nor is it itself a rule or a final action by SEVP." *Id*.

---

[6] The July 6 guidance found in the record at ECF No. 20-3, Ex. C, has been removed from ICE's website.

[7] https://www.ice.gov/doclib/sevis/pdf/bcm2001-05.pdf (last visited on July 23, 2020).

4

On March 9, 2020, SEVP issued another broadcast message, advising F and M nonimmigrant students, SEVP-certified schools, and other stakeholders that ICE would be permitting certain flexibilities to nonimmigrant students who were seeking to maintain their status in light of the COVID-19 pandemic. *See* Broadcast Message: COVID-19 and Potential Procedural Adaptations for F and M Nonimmigrant Students (Mar. 9, 2020), found at ECF No. 20-1, Ex. A. Appendix 1 of the March 9 broadcast message explains the requests that SEVP made of schools in March to maintain integrity of the nonimmigrant student program in accordance with these flexibilities. *Id*. As with the January broadcast, the March broadcast reiterated that it "is not a substitute for applicable legal requirements, nor is it itself a rule or a final action by SEVP." *Id*. The March broadcast also states that "SEVP is monitoring this situation closely. The program will supplement this guidance with additional information and will adjust guidance as needed." *Id*.

On March 13, 2020, SEVP released "COVID-19: Guidance for SEVP Stakeholders" to provide clarification on the effects of the March 9 broadcast. ECF No. 20-2, Ex. B. As is relevant to Plaintiff's contentions here, the March 13 broadcast provided guidance with respect to a scenario in which a SEVP-certified learning institution, as an "emergency procedure[]" in response to the emerging COVID-19 pandemic, "temporarily stops in-person classes but implements online or other alternate learning procedures and the nonimmigrant student remains in the United States." *Id*. In that scenario, the guidance explained that "[g]iven the extraordinary nature of the COVID-19 emergency, SEVP will allow F-1 and/or M-1 students to temporarily count online classes towards a full course of study in excess of the limits stated in 8 C.F.R. § 214.2(f)(6)(i)(G) and 8 C.F.R. § 214.2(m)(9)(v). This temporary provision is only in effect for the duration of the emergency and in accordance with the procedural change documents filed in a timely manner to SEVP." *Id*.

In understanding this guidance, context is critical. At the time of this announcement, it was the middle of the spring semester and large segments of the country were abruptly moving toward maximum telework as an initial response to COVID-19, which had been declared a pandemic by the World Health Organization just two days earlier.[8] The movement to maximum telework (and corresponding movement toward remote learning) was contemplated to be a temporary transition and, indeed, beginning in June 2020, that trend began to reverse as various government agencies began to initiate a phased return to the office, and some universities announced that students would return to campus for the fall semester.[9]

The March 13 guidance states that "[t]his temporary provision is only in effect for the duration of the emergency." ECF No. 20-2, Ex. B. The term "emergency" is not defined in the guidance and is reasonably understood to be the "emergency" that the pandemic presented in the middle of a school semester and the abrupt transition to maximum telework and remote learning that occurred as an initial response to COVID-19. That is how ICE has indicated it understands the term, as explained in the Frequently Asked Question ("FAQ") document, dated July 7, 2020. *See* ECF No. 20-4, Ex. D (July 7 FAQs). In the July 7 FAQs, ICE explained that the March 2020 guidance was announced because "DHS was faced with an urgent need to address challenges in this area mid-semester as the COVID-19 situation began evolving." *Id.*

---

[8] *See*, *e.g.*, U.S. Office of Personnel Management website on COVID-19, https://www.opm.gov/policy-data-oversight/covid-19/fact-sheet-additional-guidance-in-connection-with-the-covid-19-emergency/ (last visited on July 23, 2020).

[9] *See*, *e.g.*, Nicole Ogrysko, *USDA enters 'phase one' of employees gradually returning to DC area offices*, Federal News Network (June 3, 2020), https://federalnewsnetwork.com/workforce/2020/06/usda-enters-phase-one-employees-gradually-returning-to-d-c-area-offices/ (last visited on July 23, 2020); Abigail Hess, *65% of colleges are preparing for in-person classes this fall*, CNBC (June 23, 2020), https://www.cnbc.com/2020/06/23/65percent-of-colleges-are-preparing-for-in-person-classes-this-fall.html (last visited on July 23, 2020).

**D.     The Rescinded July 6 Guidance and July 7 FAQs.**

On July 6, 2020, ICE issued a press release and SEVP issued a broadcast message, which outlined the temporary procedural adaptions for the fall 2020 semester. ECF No. 20-3, Ex. C (July 6 guidance). The July 6 guidance recognized, "There will still be accommodations to provide flexibility to schools and nonimmigrant students, but as many institutions across the country reopen, there is a concordant need to resume the carefully balanced protections implemented by federal regulations." *Id*. The goal of this announcement was to provide advance notice that a temporary rule change would be coming before the fall 2020 semester. This message stated that it "is intended to provide additional time to facilitate the implementation of these procedures," and that it does not create any right or benefit. *Id*.

The July 6 Guidance also provided:

Students attending schools operating entirely online may ***not*** take a full online course load and remain in the United States. The U.S. Department of State will not issue visas to students enrolled in schools and/or programs that are fully online for the fall semester nor will U.S. Customs and Border Protection permit these students to enter the United States. Active students currently in the United States enrolled in such programs must depart the country or take other measures, such as transferring to a school with in-person instruction to remain in lawful status or potentially face immigration consequences including, but not limited to, the initiation of removal proceedings.

ECF No. 20-3, Ex. C. This guidance reflected the coordination between SEVP, U.S. Customs and Border Protection, and the U.S. Department of State regarding nonimmigrant F and M visa holders and the interrelationship between these agencies in enforcing immigration law as applied to nonimmigrant students.

7

On July 7, 2020, SEVP published the FAQ document, which further explained the July 6 guidance. ECF No. 20-4, Ex. D (July 7 FAQs). Among other things, the FAQs explained that the March 2020 guidance was in effect through the end of the summer semesters. *Id*. The FAQs also provided an explanation justifying the change in policy for the fall semester, namely "to maximize flexibility for students to continue their studies, while minimizing the risk of transmission of COVID-19 by not admitting students into the country who do not need to be present to attend classes in-person." *Id*.

**E.    The Rescission Of The July 6 Guidance.**

The July 6 guidance was rescinded on July 14, 2020 when the government announced its agreement to rescind the guidance at a hearing in a related case in the District of Massachusetts. The court was informed that the government would rescind the July 6 guidance, the July 7 FAQs, and their implementation on a nationwide basis. *See President & Fellows of Harvard College v. U.S. Dep't of Homeland Sec.*, Case No. 1:20-cv-11283, ECF No. 119 (D. Mass) (docket entry describing proceedings before the district judge). The court was also informed that the government would return to the March 9, 2020 and March 13, 2020 guidance. *Id*. As a result, the pending temporary restraining order/preliminary injunction motions in the Harvard case were rendered moot. *Id*.

Then on July 15, 2020, the July 6 guidance were removed from the ICE website, https://www.ice.gov/coronavirus, where it was previously posted. *See* ECF No. 37, ¶ 3 and Ex. A (showing ICE webpage, https://www.ice.gov/coronavirus, that was "Updated 07/15/2020 9:00am"). The July 7 FAQs were also removed from the ICE website that same day. *Id*. The contemporaneous press release about the July 6 guidance is still on the ICE website. The press release, however, is a historical document found with other press releases that ICE has issued.[10] As shown in the copy of the press release submitted by Plaintiffs, the press release now contains a prominent banner directing readers to ICE's

---

[10] *See* https://www.ice.gov/news/all (last visited on July 23, 2020).

website, www.ICE.gov/covid19, for current guidance. ECF No. 37, Ex. B. As the
screenshot of ICE's webpage submitted by Plaintiffs shows, the current guidance for
nonimmigrant students consists entirely of the January 29 guidance, the March 9
guidance, the March 13 FAQs, and an "Optional COVID-19 School Reporting
Template" from March 2020. *See* ECF No. 37, Ex. A (July 16, 2020 screenshot of ICE
webpage, https://www.ice.gov/coronavirus).

**F.      Interested Parties' Response To The Rescission Of The July 6 Guidance.**

The July 6 guidance engendered a number of lawsuits nationwide challenging the
guidance. But following the rescission of the July 6 guidance, no court has granted any
plaintiffs' TRO application. In all the related cases of which Defendants are aware, the
parties have withdrawn TRO applications or the court has denied them as moot in light
of the rescission of the July 6 guidance, as happened in the District of Massachusetts. *See
President & Fellows of Harvard College*, Case No. 1:20-cv-11283, ECF No. 119; *The
Regents of The Univ. of California v. U.S. Dep't of Homeland Sec.*, Case No. 20-cv-
4621, ECF No. 22 (N.D. Cal. July 15, 2020) (order granting stipulation that plaintiffs'
TRO/PI motions were moot in light of the Government's agreement to rescind the July 6
guidance); *The State of California v. U.S. Dep't of Homeland Sec.*, Case No. 4:20-cv-
04592, ECF No. 17 (N.D. Cal.) (same); *Univ. of Oregon v. U.S. Dep't of Homeland Sec.*,
Case No. 6:20-cv-01127, ECF No. 45 (D. Or. July 17, 2020) (stipulation withdrawing
TRO/PI motion in light of the rescission of the July 6 guidance); *State of New York v.
U.S. Dep't of Homeland Sec.*, Case No. 1:20-cv-05349, ECF No. 26 (S.D.N.Y. July 16,
2020 (order denying motion for TRO/PI in light of rescission of July 6 guidance); *Johns
Hopkins Univ. v. U.S. Dep't of Homeland Sec.*, Case No. 1:20-cv-01873, July 14, 2020
Minute Order (D.D.C. ) (denying motion for TRO/PI "as moot in light of the
government's decision to rescind implementation of the July 6, 2020 Policy Directive
and the July 7, 2020 FAQ and return to the March 9, 2020 and March 13, 2020 policy");
*Commonwealth of Mass. v. U.S. Dep't of Homeland Sec.*, Case No. 1:20-cv-11311, July

14, 2020 text entry on docket (D. Mass.) (finding PI motion moot).

Each of Plaintiffs' schools, UCI, USC, and UCLA, made public statements about the rescission of the the July 6 guidance. On July 14, 2020, USC's President issued a statement that: "Earlier today, we were very pleased to learn that the Department of Homeland Security agreed to rescind its July 6 guidance. This would have, among other things, required our international students to take in-person classes in order to maintain their visa status."[11]

UCI sent a message to its community on July 14, 2020, stating that "it was great to see the news today of the announcement made in U.S. District Court that restrictions related to international students taking classes online have been rescinded. This latest update returns to the status quo established by the U.S. Student and Exchange Visitor Program in March[.]"[12]

Similarly, UCLA announced, "In light of the announcement that the 7/6 policy directive was rescinded, both UC and the State of California agreed that their preliminary injunction motions are no longer needed at this time, but they will continue to monitor the federal government's implementation of the rescission and are scheduled to report back to the judge on July 21." As noted in the press release, "the University of California stands ready to take further action if needed."[13]

---

[11] https://www.president.usc.edu/ice-reverses-directive-to-revoke-international-student-visas/ (last visited on July 22, 2020).

[12] https://ic.uci.edu/resource-pages/immigration-policy-updates.php (last visited on July 22, 2020).

[13] https://www.internationalcenter.ucla.edu/covid-19-updates (last visited on July 22, 2020).

**G.      TRO Application Filed After The Rescission Of The July 6 Guidance.**

After filing a Complaint[14] seeking (1) a declaration that the July 6 guidance is unlawful, (2) injunctive relief preventing enforcement of the July 6 guidance, (3) an order vacating the July 6 guidance and reinstating the March 13 guidance, and (4) attorneys' fees and costs (ECF No. 1), Plaintiffs filed the TRO Application on July 14, 2020 (ECF No. 16). Plaintiffs did so even though they were aware that the government had agreed to rescind the July 6 guidance and had spoken with Defendants' counsel about this development. (ECF No. 18.) On July 16, 2020, Plaintiffs filed an Amendment to the TRO Application to "clarify the relief requested in the [TRO] Application." The Amendment requests "an order directing Defendants to administer the Student and Exchange Visitor Program in accordance with the March Guidance for the duration of the COVID-19 emergency, unless replaced by a legally sufficient agency rule promulgated through notice-and-comment rulemaking[.]" (ECF No. 36 at 4.)

**III.   LEGAL STANDARDS**

**A.      Standard For Temporary Restraining Order.**

A TRO is "an extraordinary remedy that may only be awarded upon a clear slowing that the Petitioner is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). For a TRO to issue the moving party must demonstrate (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. *See id.* at 20. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (citation and internal quotation marks omitted).

---

[14] Plaintiffs have not yet complied with Federal Rule of Civil Procedure 4(i)(1) as neither the United States Attorney's Office nor the Attorney General have been served with the summons and Complaint, according to Plaintiffs' proof of service. *See* ECF No. 38.

**B.    Standard For Dismissal.**

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Although the scope of review is limited to the contents of the complaint, the Court may consider exhibits submitted with the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.9 (9th Cir. 1990).

**IV.    ARGUMENT**

**A.    Plaintiffs Are Not Entitled To A Temporary Restraining Order.**

1.    <u>Plaintiffs Fail To Establish A Likelihood Of Success On The Merits.</u>

Plaintiffs' claims fail because they are moot. Federal jurisdiction requires a live case or controversy at every stage of litigation. *See* U.S. Const. art. III, § 2, cl. 1; *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). To satisfy this requirement, "a litigant must continue to have a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'" *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007) (quoting *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001)). As such, a federal court does not have authority "to give opinions upon moot questions." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Northwest Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).

1    Because a "federal court does not have jurisdiction to give opinions upon moot

2    questions or abstract propositions, or to declare principles or rules of law which cannot

3    affect the matter in issue in the case before it[,] . . .[i]f an event occurs that prevents the

4    court from granting effective relief, the claim is moot and must be dismissed." *Am.*

5    *Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (internal

6    quotation marks and citations omitted); *see also Habetler v. Burwell*, 667 F. App'x 633,

7    634 (9th Cir. 2016) (holding that where a Medicare coverage rule had been retired, a

8    ruling that the retired rule was "invalid were it still in place would be an advisory

9    opinion.") (citing *Ashcroft v. Mattis*, 431 U.S. 171 (1977)); *Bd. of Trustees of Glazing*

10   *Health & Welfare Tr. v. Chamber*s, 941 F.3d 1195, 1198 (9th Cir. 2019) ("the repeal,

11   amendment, or expiration of challenged legislation is generally enough to render a case

12   moot and appropriate for dismissal.") (citing Supreme Court precedent).

13        Here, Plaintiffs seek variety of relief solely premised on challenging the July 6

14   guidance and enforcement. Because that guidance has been rescinded, there is no basis

15   for the Court to grant Plaintiffs any relief.

16        After filing the TRO Application, Plaintiffs attempted to overcome mootness by

17   filing an Amendment to the TRO Application that reworded the relief that Plaintiffs

18   sought. ECF No. 36. Namely, Plaintiffs now purport to seek an order directing

19   Defendants to administer the SEVP in accordance with the March guidance for the

20   "duration of the COVID-19 emergency, unless replaced by a legally sufficient agency

21   rule promulgated through notice and comment rulemaking[.]"[15] *Id.* This amended relief

22   is moot because ICE has reverted to the March guidance. *See*

23   https://www.ice.gov/coronavirus (section on "Nonimmigrant Students and SEVP-

24

25        _____

26   [15] The July 6 guidance was not subject to the notice and comment requirements of the
     Administrative Procedure Act ("APA") because it was not a legislative rule, but, at
     most, a statement of policy. The APA provides an exception to its notice-and-comment

27   requirements for "general statements of policy." 5 U.S.C. § 553(b)(A). A statement of
     policy "genuinely leaves the agency and its decisionmakers free to exercise discretion"

28   when applying the policy and does not create a "binding norm." *Am. Bus. Ass'n v.*
     *United States*, 627 F.2d 525, 529 (D.C. Cir. 1980).

13

1    Certified Schools" identifying current operative guidance).

2         Furthermore, Plaintiff's demand for an order lasting the "duration of the COVID-

3    19 emergency" would freeze a single policy decision in time for an undefined duration.

4    If granted, ICE would be unable to respond to new developments of this unprecedented

5    health crisis until Plaintiffs deem appropriate. There is no basis for seven students to

6    have such control over ICE's nationwide immigration policies. Nor have Plaintiffs

7    identified a viable legal basis for obtaining such relief. Plaintiffs therefore are unlikely to

8    succeed on the merits of their claims and the TRO should be denied as moot.

9         This is the result that the parties and courts in every related case have reached

10   after the July 6 guidance was rescinded. *See* § II(F) above (summarizing cases denying

11   or withdrawing TRO applications as moot). A different result is not warranted here.[16]

12        2.    Plaintiffs Are Not Likely To Suffer Irreparable Harm In The Absence

13              Of Preliminary Relief.

14        Besides not showing a likelihood of success on the merits, Plaintiffs fail to

15   demonstrate immediate, irreparable harm absent injunctive relief.

16        "Issuing a preliminary injunction based only on a possibility of irreparable harm is

17   inconsistent with our characterization of injunctive relief as an extraordinary remedy that

18   may only be awarded upon a clear showing that the Petitioner is entitled to such relief."

19   *Winter*, 555 U.S. at 22. Conclusory or speculative allegations are not enough to establish

20   a likelihood of irreparable harm. *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*,

21   736 F.3d 1239, 1250 (9th Cir. 2013); *see also Caribbean Marine Servs. Co. v. Baldrige*,

22   844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable

23   injury sufficient to warrant granting a preliminary injunction."); *Am. Passage Media*

24   *Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (finding irreparable

25   harm not established by statements that "are conclusory and without sufficient support in

26   _____

27        [16] This is particularly true here where Plaintiffs knew of the rescission of the July
     6 guidance before filing the TRO Application. *See* ECF No. 18 (plaintiffs' filing
28   describing their knowledge of the rescission and discussion of the same with defense
     counsel).

facts"). Moreover, the threat of injury must be "immediate." *See Caribbean Marine Servs. Co.*, 844 F.2d at 674.

Here, Plaintiffs claim they face irreparable harm based on speculation about future events, which in turn is based on the assumption that the July 6 guidance would not be rescinded. But the assumption was wrong. The July 6 guidance was rescinded, which Plaintiffs knew when they filed the TRO, and therefore, their speculation about what might happen to them is misplaced and certainly does not constitute a clear showing that Plaintiffs are entitled to extraordinary relief.[17] *See Winter*, 555 U.S. at 22.

   3.   The Balance Of Equities And The Public Interest Do Not Favor
        Plaintiffs.

The last two TRO factors—focusing on the balance of equities and where the public interest lies—tip sharply in Defendants' favor. In the enforcement of public laws, the interests of the government and the public merge. The public interest in enforcement of United States immigration laws is significant. *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant."); *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and permit[s] and prolong[s] a continuing violation of United States law.") (internal marks omitted)).

---

[17] Even if the July 6 guidance had not be rescinded, which it has been, Plaintiffs have not alleged or made a showing that they have suffered any damages. Plaintiffs each allege that they currently reside in the United States. (Compl. ¶¶ 9-15.) Therefore, none of the alleged harms—for moving, flying abroad, taking online class or interviewing from China, or any effects on personal relationships—have occurred and amount to speculation. (*See* TRO App. at 16-19.)

1    In addition, the government has a strong interest in the uniform and proper

2  application of its regulations governing the granting of visas to foreign nationals. *See*

3  *Fla. EB5 Investments, LLC v. Wolf*, --- F. Supp. 3d. ---, 2020 WL 1079181, at *4

4  (D.D.C. Mar. 6, 2020) (citing *Blackie's House of Beef, Inc.*, 659 F.2d at 1220-21).

5  Congress, through the INA, has delegated to the Secretary of Homeland Security

6  significant authority to administer and enforce the immigration and nationality laws,

7  including those governing the admission of foreign students. *See* 8 U.S.C. §§ 1103(a),

8  1184(a)(1); *cf. Arizona v. United States*, 567 U.S. 387, 408-09 (2012). Any order that

9  enjoins a governmental entity from enforcing actions taken pursuant to statutes enacted

10  by the duly elected representatives of the people constitutes an irreparable injury that

11  weighs heavily against the entry of injunctive relief. *See New Motor Vehicle Bd. v. Orrin*

12  *W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

13    Plaintiffs' requested relief harms these important interests. Plaintiffs ask this Court

14  for an order directing Defendants to administer the SEVP in accordance with the March

15  guidance for the "duration of the COVID-19 emergency[.]" ECF No. 36 (Amendment to

16  TRO Application). Doing so would not be in the interest of the public or the government

17  because ICE would be unable to respond to new developments in the COVID-19

18  pandemic. Given the volatile, fluid nature of the pandemic, SEVP guidance has warned

19  schools and students that the guidance it has issued may be altered or superseded at any

20  time. SEVP continues to adapt and adjust enforcement priorities in consideration of the

21  pandemic, in accordance with the law and as a proper exercise of the agency's

22  discretion. Granting the "amended relief" that Plaintiffs seek would harm the

23  government's and the public's interests and would undermine the "efficient

24  administration of the immigration laws." *Innovation Law Lab v. McAleenan*, 924 F.3d

25  503, 510 (9th Cir. 2019).

26    For these reasons, the balance of the equities and the public interest favor

27  Defendants.

28

16

**B.**    **Plaintiffs' Claims Are Moot In Light Of The Rescission Of The July 6 Guidance Thus Necessitating Dismissal Of The Action.**

As demonstrated above, Plaintiffs' claims are moot. Thus, the Court should dismiss Plaintiffs' action because the relief they seek, rescission of the July 6 guidance and July FAQs, has already occurred. A "federal court does not have jurisdiction to give opinions upon moot questions or abstract propositions." *Am. Rivers*, 126 F.3d at 1123. Here, Plaintiffs seek a variety of relief solely premised on challenging the July 6 guidance and enforcement. Because that guidance has been rescinded, there is no basis for the Court to grant any of the relief that Plaintiffs seek.

**V.    CONCLUSION**

For these reasons, the TRO Application should be denied as moot and the Complaint dismissed without prejudice.

Dated: July 23, 2020                    Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section


    */s/ Paul B. Green*
PAUL B. GREEN
JASMIN YANG
Assistant United States Attorneys

Attorneys for Defendants
U.S. Department of Homeland Security;
U.S. Immigration and Customs Enforcement;
Chad R. Wolf: and Matthew Albence

17