Mark D. Rosenbaum (SBN 59940)
mrosenbaum@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

Lisa M. Gilford (SBN 171641)
lgilford@sidley.com
David R. Carpenter (SBN 230299)
drcarpenter@sidley.com
Stacy Horth-Neubert (SBN 214565)
shorthneubert@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896 6044
Facsimile: (213) 896 6600

*Additional Counsel Listed on Next Page*

Attorneys for Plaintiffs
Z.W., C.Y, X.Y., A.G., M.X., Z.L., W.R.,
and DOES 1 through 50

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION AT SANTA ANA

| | |
|---|---|
| Z.W., C.Y, X.Y., A.G., M.X., Z.L., W.R., and DOES 1 through 50,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; CHAD R. WOLF, Acting Secretary, U.S. Department of Homeland Security; MATTHEW ALBENCE, Acting Director, U.S. Immigration and Customs Enforcement,<br><br>Defendants. | Case No.  8:20-CV-01220 CJC (KESx)<br><br>Assigned to: Hon. Cormac J. Carney<br>Magistrate Judge: Karen E. Scott<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND RESPONSE TO REAPPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Hearing Date:  August 24, 2020<br>Hearing Time: 1:30 p.m.<br>Courtroom 9B |

Sheri Porath Rockwell (SBN 165726)
sheri.rockwell@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500

Evan Caminker (*admitted pro hac vice*)
caminker@umich.edu
Dean Emeritus and Branch Rickey Collegiate Professor of Law
University of Michigan Law School*
701 South State Street, 3250 South Hall
Ann Arbor, MI  48109-1215
Telephone: (734) 763-5221

Mark E. Haddad (SBN 205945)
markhadd@usc.edu
USC Gould School of Law*
UNIVERSITY OF SOUTHERN CALIFORNIA
699 Exposition Blvd.
Los Angeles, CA  90089
Telephone:  (213) 675-5957

*University affiliation provided
for identification purposes only*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 3

    A.    The July 6 Guidance Abrubtly Issues Without Notice and in Disregard of the Ongoing Public Health Emergency ...................................................... 3

    B.    On July 10, Plaintiffs File Their Complaint Alleging Defendants Violated the APA and the Due Process Clause ................................................... 4

    C.    Plaintiffs' TRO Application and Defendants' Announced Intent to "Rescind" the July 6 Guidance ............................................................... 5

    D.    In Their July 23 Motion to Dismiss, Defendants Offer New Explanations For The March Guidance And July 6 Guidance ........................................ 6

    E.    One Day After the July 23 Brief, ICE Issues New Guidance Allowing Online Instruction –But Only For Returning Students and Only For The Fall Term ..................................................................................................... 8

LEGAL STANDARD ............................................................................................. 8

ARGUMENT .......................................................................................................... 9

I.    Defendants Do Not Dispute The Merits of Plaintiffs' Claims ........................... 99

II.    The Action Is Not Moot Because Defendants Have Failed To Meet Their Heavy Burden to Demonstrate They Cannot Simply Reinstate the Policy ................. 11

    A.    Defendants Fail to Establish the Conduct at Issue Will Not Reoccur ..... 13

    B.    The Court Can Provide Effective Relief to Plaintiffs ............................. 16

CONCLUSION ..................................................................................................... 17

i

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*A.O. v. Cuccinelli,*
 - F. Supp. 3d. -, No. 19-cv-06151, 2020 WL 2097586 (N.D. Cal. May

6

1, 2020) ...................................................................................................... 11, 15

7

*Azar* v. *Allina Health Servs.*,
 139 S. Ct. 1804 (2019) ...................................................................................... 11

8

9

*Bell v. City of Boise*,
 709 F.3d 890 (9th Cir. 2013) ...................................................................... 12, 14

10

11

*Bryant v. Fed. Bureau of Prisons*,
 No. 2:11-CV-00254, 2014 WL 2472255 (C.D. Cal. June 2, 2014) ......................... 9

12

13

*Clavo v. Zarrabian*,
 No. SACV03864, 2004 WL 3709049 (C.D. Cal. May 17, 2004) .................... 14, 16

14

15

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
 140 S. Ct. 1891 (2020)........................................................................................ 7

16

17

*Earth Island Inst. v. U.S. Forest Serv.*,
 442 F.3d 1147 (9th Cir. 2006), *abrogated on other grounds by Winter
 v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)............................................ 13

18

19

*Ferrin v. Bias*,
 No. EDCV02535, 2003 WL 25588274 (C.D. Cal. Jan. 2, 2003)............................. 9

20

21

*Fikre v. Fed. Bureau of Inv.*,
 904 F.3d 1033 (9th Cir. 2018) .......................................................................*passim*

22

23

*Knox v. Serv. Employees Intern. Union, Local 1000*,
 567 U.S. 298 (2012)................................................................................... 1, 11

24

25

*In re New Century*,
 588 F. Supp. 2d 1206 (C.D. Cal. 2008) .................................................................. 8

26

27

*Norman-Bloodsaw v. Lawrence Berkeley Lab, et al.*,
 135 F.3d 1260 (9th Cir. 1998) ............................................................................ 14

28

*Professional Beauty Fed. of Cal. v. Newsom*,
     No. 2:20-cv-04275, 2020 WL 3056126 (C.D. Cal. June 8, 2020) ......................... 12

*Rosemere Neighborhood Ass'n. v. U.S. Envmt'l. Prot. Agency*,
     581 F.3d 1169 (9th Cir. 2009) ................................................................... 15

## INTRODUCTION

Plaintiffs brought this action in response to Defendants' arbitrary and capricious attempt to coerce universities to reopen during the ongoing coronavirus emergency by threatening to deport international students. As Plaintiffs showed, the July 6 Guidance demonstrated a callous disregard for students' safety and reliance interests and was issued without any substantive explanation for the drastic policy reversal and without sufficient notice, all in violation of the Administrative Procedure Act ("APA") and Due Process Clause.

After this and other lawsuits were filed, Defendants announced their intent to "rescind" the July 6 Guidance. At first, the "rescission" merely involved deleting the July 6 Guidance from part of the ICE website without issuing--or even committing to issue--a formal statement of rescission and affirmative confirmation that the March Guidance remained in place. On that thin basis, Defendants filed their July 23 brief opposing the TRO and moving to dismiss this action as moot (the "July 23 Brief"). It was not until the next morning, July 24, that ICE actually published new guidance stating that the March Guidance providing an exemption for online-only instruction would remain in effect for the fall semester for returning students (the "July 24 Guidance"). (*See* Doc. 46.)

Plaintiffs agree a TRO is no longer necessary because the July 24 Guidance provides much of the relief sought in the TRO Application and purports to preserve the status quo for the fall semester. To moot the entire case, however, Defendants would have to meet the heavy burden of showing that the challenged conduct cannot reasonably be expected to resume again. *See Knox v. Serv. Employees Intern. Union, Local 1000*, 567 U.S. 298, 307 (2012); *Fikre v. Fed. Bureau of Inv.,* 904 F.3d 1033, 1037 (9th Cir. 2018). Defendants have not even attempted to make that showing here, let alone made any showing to this Court (or elsewhere) that they will not resume the challenged conduct.  By forgoing such an attempt, they have conspicuously left the door to resumption wide open.

The July 24 Guidance on its face applies only to the "fall school term," (Doc. 46), and conspicuously does not commit to keeping the March Guidance in place for the duration of the coronavirus emergency. Nor have Defendants stated when they will issue guidance for the next semester (which starts at the beginning of January), what criteria they will use, or what process and notice will be provided in connection with any new rule. As a result, Plaintiffs remain at risk that Defendants, without sufficient notice or regard for Plaintiffs' health and reliance interests, will change the rules again, even if the coronavirus emergency is still ongoing.

The last time Defendants abruptly changed the rules, they threw Plaintiffs' lives into disarray. While Defendants permit Plaintiffs to stay in the country and pursue their studies *for now*, they have refused to acknowledge the defects with the July 6 Guidance and have refused to provide the assurances necessary to allow Plaintiffs to plan their studies and their lives during the pandemic. Indeed, in light of Defendants' failure to abide by the March Guidance's promise it would remain in place for the duration of the coronavirus emergency, there is no reason to assume they will not again abruptly change the new guidance this week, next week, or in the middle of the fall 2020 semester. Revoking the exemption during the current academic year while the pandemic persists would be just as disruptive as before to Plaintiffs' housing, health, educational progress, and personal wellbeing.

Under these circumstances, Defendants' voluntary cessation of the July 6 Guidance does not moot Plaintiffs' action because if this case were dismissed as moot, Defendants could simply resume the offending conduct—e.g., re-issue the July 6 Guidance as "December 6 Guidance," or even revoke the July 24 Guidance in the middle of the fall semester—again without explanation or notice. Moreover, there is still relief that Plaintiffs can pursue, such as injunctive relief requiring Defendants to continue to adhere to the March Guidance until such time as the coronavirus emergency has abated, unless replaced by a legally sufficient agency rule promulgated through notice and comment rulemaking.

1   Accordingly, and for the reasons below, Defendants' Motion to Dismiss should

2   be denied.[1]

3   **BACKGROUND**

4   The following recaps the events giving rise to this action and that have occurred

5   after the initial filing of the TRO and Defendants' July 23 Brief—as necessary to

6   understand why ongoing events may have mooted the TRO but have not mooted the

7   action as a whole.

8   **A.    The July 6 Guidance Abrubtly Issues Without Notice and in**
9   **Disregard of the Ongoing Public Health Emergency.**

10   The March Guidance assured schools and students that "for the duration of the

11   coronavirus emergency," "SEVP intends to be flexible with temporary adaptations,"

12   including by allowing SEVP students to reside in the United States even if their

13   schools moved to online-only courses to protect the health and safety of their students,

14   faculty and staff. (Doc. 1 at ¶ 44.) In reliance on the March Guidance, schools in

15   California and across the country expended significant time and expense to assess and

16   craft plans for the 2020-2021 academic year aimed at protecting the health and safety

17   of the students, faculty and staff, while allowing students to attend classes. (Doc. 1 at

18   ¶ 75; *see also* Doc. 28. ¶¶ 15, 6-14, 22.) After careful consideration, schools adopted

19   various education programs, which include online-only class schedules for some or all

20   students. (Doc. 28 ¶¶ 13-14.)

21   Despite the ongoing COVID-19 emergency, on July 6, 2020, Defendants

22   abruptly reversed course, announcing that ICE was "modifying the temporary

23   exemptions" announced in March, and that under the new policy, nonimmigrant

24   students "attending schools operating entirely online [for the fall] may not take a full

25   online course load and remain in the United States." (Doc. 1 ¶¶ 54-56.) On July 7,

26   Acting DHS Secretary Ken Cuccinelli confirmed that the real purpose behind the

27
28
[1] To the extent necessary, Plaintiffs request leave to amend their Complaint to plead their ongoing harm and further requests for relief.

policy was to "encourage schools to reopen," consistent with the President's tweets. (Doc. 1 ¶ 71.)

### B.    On July 10, Plaintiffs File Their Complaint Alleging Defendants Violated the APA and the Due Process Clause.

Plaintiffs are international students on F-1 student visas currently enrolled in graduate degree programs, including law school, at prominent universities in southern California. (Doc. 16 at 15.) In reliance on the March Guidance, Plaintiffs made and implemented plans to reside in the United States during the 2020-2021 academic year. They have terminated their home-country housing, sold their furniture, signed new leases, relocated and incurred significant moving and travel expenses, and obtained health insurance for the school year. (Doc. 1 ¶¶ 78-82; 90. *See also* Doc. 21 ¶¶ 4, 6; Doc. 22 ¶ 6; Doc. 23 ¶¶ 4, 11; Doc. 24 ¶ 4; Doc. 25 ¶ 4.). They have spouses and partners with whom they reside near their schools. (Doc. 23 ¶ 4, 10; Doc. 25 ¶¶ 3, 4, 8, 10; Doc. 27 ¶ 3.) They selected a school near a family member for whom they serve as the sole familial caretaker. (Doc. 23 ¶¶ 5, 11.) They have made plans to engage in training programs and clinics, and pro bono opportunities during the school year. (Doc. 1 at ¶¶ 93, 96. *See also* Doc. 23 ¶ 7; Doc. 27 ¶ 5.) Their schools have postponed On-Campus Interviews (OCI) until the spring term. (Doc. 1 at ¶¶ 99-100. *See also* Doc. 22 ¶ 12.) They have made plans to or have already applied for green cards or other legal immigrant status for which leaving the country mid-school year will have negative immigration consequences. (*Id.* at ¶¶ 97-98. *See also* Doc. 21 ¶ 5; Doc. 23 ¶ 9; Doc. 24 ¶¶ 7, 16; Doc. 25 ¶ 5.) It would be virtually impossible for them to transfer to another school offering in person classes. (Doc. 21 ¶ 9; Doc. 22 ¶ 13; Doc. 24 ¶ 14; Doc. 25 ¶ 8; Doc. 26 ¶ 11; Doc. 27 ¶ 7.) They are suffering severe stress and anxiety due to the prospect of deportation before the end of the academic year. (Doc. 22 ¶ 13; Doc. 23 ¶ 10; Doc. 24 ¶ 8; Doc. 25 ¶ 10; Doc. 26 ¶¶ 9, 10, 12; Doc. 27 ¶ 8.)

The July 6 Guidance threatened to upend Plaintiffs' lives *forcing* them to leave the United States and ripping them from their communities and their academics. Thus,

on July 10, 2020, Plaintiffs filed their Complaint alleging, among other things, that they were entitled to rely on the March Guidance "for the duration of the emergency." (Doc. 1 ¶¶ 77, 113.) As to the July 6 Guidance, the Complaint alleges that the rule change (1) was "arbitrary and capricious" in violation of the APA because Defendants failed to consider stakeholders' reliance interests on the prior policy, and because Defendants failed to provide a reasoned explanation; (2) was improperly issued without meeting notice-and-comment requirements, also in violation of the APA; and (3) violated the Due Process Clause. (*Id.* ¶¶ 103-128.) The relief Plaintiffs seek in the Complaint includes an order preventing Defendants from enforcing the July 6 Guidance or promulgating it as a Final Rule, an order "reinstating the March 13 Guidance," and "*[a]ny and all other such relief as the Court may deem appropriate*." (*Id.* at 34-35 (emphasis added).)

### C.   Plaintiffs' TRO Application and Defendants' Announced Intent to "Rescind" the July 6 Guidance

Between July 8 and July 13, in addition to this lawsuit brought on behalf of international graduate and law students, a half-dozen lawsuits were filed by college and universities and eighteen states. (*See* Doc. 19 (Notice of Pendency of Other Actions or Proceedings).) On July 14, 2020, a docket entry described as "Electronic Clerk's Notes" was posted in the matter *President & Fellows of Harvard College v. U.S. Dep't of Homeland Sec.*, Case No. 1:20-cv-11283 (D. Mass.), Doc. 119, stating that "[t]he Government has agreed to rescind the July 6, 2020 Policy Directive and the July 7, 2020 FAQ, and has also agreed to rescind their implementation." As of the end of the day on July 14, however, the July 6 Guidance remained posted on the ICE website, https://www.ice.gov/coronavirus. (*See* Doc. 37 ¶ 2.) After Defendants' counsel was unable to confirm Defendants' position with respect to the present suit, on July 14, 2020, Plaintiffs filed their TRO Application seeking to enjoin implementation of the July 6 Guidance and requesting that Defendants issue a further broadcast message that the July 6 Guidance was enjoined. (Doc. 16 at 32-33.)

On July 15, 2020, ICE updated the "Nonimmigrant Students and SEVP-Certified Schools section of its website on "ICE Guidance on COVID-19," https://www.ice.gov/coronavirus, to delete the July 6, 2020 Policy Guidance from the "Guidance Documents" and to delete the related July 7 FAQ from the "Frequently Asked Questions" sections of the site. (Doc. 37 at ¶ 3.) But ICE did so without providing any formal statement of rescission or other explanation, and without issuing a statement confirming that the March Guidance will remain in effect for the duration of the coronavirus emergency. (*Id.*)

On July 16, 2020, Plaintiffs filed an Amended Application for TRO amending and clarifying the relief they sought as including "an order directing Defendants to administer the Student and Exchange Visitor Program in accordance with the March Guidance for the duration of the COVID-19 emergency, unless replaced by a legally sufficient agency rule promulgated through notice-and-comment rulemaking." (Doc. 36 at 4.) As of that date, July 16, ICE's webpage https://www.ice.gov/coronavirus continued to include, in its "Related Stories" section, a hyperlink stating "SEVP modifies temporary exemptions for nonimmigrant students taking online course during fall 2020 semester," which, when clicked, displayed a news release providing essentially the same text as the July 6 Guidance. (*Id.* at 3.)

### D.   In Their July 23 Motion to Dismiss, Defendants Offer New Explanations For The March Guidance And July 6 Guidance

In their July 23 Brief, Defendants argued that both the TRO application and the case as a whole were moot based on Defendants' "rescission" of the July 6 Guidance, which they claimed meant the March Guidance was back in place. (Doc. 45 at 7.) At the same time, Defendants' brief begged the question about what Defendants planned to do moving forward.

For example, although Defendants asserted the March Guidance was being restored, they attempted to redefine the "emergency" that led to its issuance. In particular, rather than define the emergency as the COVID-19 public health crisis, the

July 23 Brief attempted to spin the "emergency" as the move to online learning occurring in the "middle of the spring semester." (Doc. 45 at 6.) That characterization conflicts with the text of the March Guidance and implies that Defendants could re-impose the substance of the July 6 Guidance at *any* time, even if the COVID-19 health emergency is continuing.

With respect to the July 6 Guidance, the July 23 Brief asserted that it was issued after the "trend" of universities' moving to online learning was "reversing" and was issued purportedly to "provide advance notice" for the fall semester. (Doc. 45 at 6, 7-8.)[2] The July 23 Brief failed to provide any actual support for that assertion. Worse yet, the July 23 Brief neither acknowledged nor refuted the core problems with the July 6 Guidance, including that the COVID-19 emergency was continuing, that students had serious safety and reliance interests at stake, that universities were in the best position to make the on-the-ground judgment about whether and how to proceed with in-person instruction (regardless of what other universities in other areas were doing), and that broadcasting a change in course barely one month before the start of the fall semester was not reasonable and failed to provide the procedurally required "advance notice."

Moreover, the July 23 Brief did not identify any formal statement by DHS rescinding the July 6 Guidance, confirming that the March Guidance would continue, or otherwise explaining what would happen next. Overall, the thrust of the July 23 Brief was that the July 6 Guidance had been deleted, but the brief did not discuss or append any evidence demonstrating limits or constraints on Defendants' ability to re-impose the July 6 Guidance or similar rule change at any time.

---

[2] Defendants try to invoke the specter of "national security" and imply that the July 6 Guidance was issued in compliance with federal regulations aimed at protecting that interest. (Doc. 45 at 2 & n.4, 3, 7.) Any such post-hoc rationale is inconsistent with contemporaneous explanations for the July 6 Guidance and would be entitled to no weight. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908, 1909 (2020). In any event, the "national security" mantra is a red herring, as Defendants' Motion to Dismiss is based on mootness and not on the merits.

**E.    One Day After the July 23 Brief, ICE Issues New Guidance Allowing Online Instruction –But Only For Returning Students and Only For The Fall Term.**

On July 24, 2020, the morning after Defendants filed their July 23 Brief, ICE issued new Guidance in the form of a new Broadcast Message, new FAQs, and a news release (together, the "July 24 Guidance"). (Doc. 46-1, 46-2, 46-3.) (It is not clear whether even Defendants' attorneys knew that this guidance was coming.) In the July 24 Guidance, ICE indicates that active nonimmigrant students and schools should abide by the March Guidance—i.e., they can stay in or re-enter the country, even if their school is engaged solely in online learning. (Doc. 46-1 at 1.) Students who were not enrolled as of March 9, 2020 will not be permitted to enter the United States to enroll in a school if all of their classes would be online only. *Id.*

Significantly, the July 24 Guidance addresses only the fall 2020 school term. It does not address the spring term or provide a timeline and process for when and how guidance will be issued for the spring semester—which for most schools (including UCI School of Law, where several Plaintiffs are enrolled) starts in the beginning of January. It also does not provide any assurance that the current exemptions will remain in place if the COVID-19 health emergency is continuing.[3]

## LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the trial court is "generally limited to the allegations in the Complaint, taken as true and construed in the light most favorable to the non-moving party." *In re New Century*, 588 F. Supp. 2d 1206, 1211 (C.D. Cal. 2008). A motion to

---

[3] Following the rescission of the July 6 Guidance and the issuance of the July 24 Guidance, in the other related lawsuits, the pending TRO applications have been denied or withdrawn, but the lawsuits themselves have not been dismissed and remain pending. *See, e.g., The State of California v. U.S. Dept. of Homeland Sec.,* Case No. 3:20-cv-04592 (N.D. Cal.), Doc. 19 (July 23, 2020 order requiring joint status report by August 4, 2020); *Regents of the University of California v. U.S. Dept. of Homeland Sec.,* Case No. 3:20-cv-04621 (N.D. Cal.) (same); *University of Oregon et al. v. U.S. Dept. of Homeland Sec.* Case No. 6:20-cv-01127, Doc. 49 (July 29, 2020 order requiring joint status report by August 7, 2020).

dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Ferrin v. Bias*, No. EDCV02535, 2003 WL 25588274, at *1 (C.D. Cal. Jan. 2, 2003). A Rule 12(b)(6) motion to dismiss for failure to state a claim is viewed with disfavor and rarely granted. *Id.* (citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).); *see also Bryant v. Fed. Bureau of Prisons*, No. 2:11-CV-00254, 2014 WL 2472255, at *3 (C.D. Cal. June 2, 2014) (noting "it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6)" and denying motion to dismiss premised on mootness).

## ARGUMENT

In their July 23 Brief, Defendants do *not* argue that Plaintiffs' claims fail on the merits and thus have not refuted Plaintiffs' significant reliance interests or the ways in which it violated the APA and Due Process to abandon the March Guidance during the COVID-19 emergency and without adequate notice. Instead, Defendants argue only that Plaintiffs' Complaint should be dismissed in its entirety because the July 6 Guidance has been rescinded, rendering Plaintiffs' claims moot. (Doc. 45 at 12-16.) Defendants are wrong: Plaintiffs' claims are not moot because the July 24 Guidance purports to be limited to the fall term, and Defendants have failed to meet their heavy burden to demonstrate they cannot simply reinstate the July 6 Guidance at any time, including before the end of the fall semester. Accordingly, Defendants' Motion to Dismiss should be denied.

## I.     Defendants Do Not Dispute The Merits of Plaintiffs' Claims.

The validity of Plaintiffs' claims is demonstrated by the unrebutted showing in their TRO Application that they are likely to prevail on the merits of their claims that Defendants' actions violated both the APA and substantive due process.

With respect to the APA claim, Plaintiffs showed that Defendants violated the APA in two separate ways: by acting arbitrarily and capriciously, and by failing to comply with the APA's notice and comment procedures. As to the former, Plaintiffs

1  showed Defendants acted arbitrarily and capriciously in violation of the APA by:

2      • Changing ICE's policy on the permissibility of online-only coursework
3        without considering the legitimate reliance interests of both schools and
4        students like Plaintiffs in the March Guidance (Doc. 16 at 21-23.);

5      • Failing to provide an adequate, reasoned explanation for abandoning the
6        March Guidance (*id.* at 23-24.);

7      • Failing to consider important aspects of the problem, including the
8        worsening COVID-19 conditions, the health and safety of students, and the
9        extreme hardship and disruption caused by the policy shift (*id.* at 25.); and,

10      • Threatening international students with removal as a pretext for the
11        politically-motivated desire "to encourage schools to reopen" (*id.* at 25-26.).

12  As to the notice and comment defect, Plaintiffs showed Defendants were required to
13  but did not comply with the APA's notice and comment rulemaking procedures by
14  abandoning the March Guidance and announcing the July 6 Guidance, which
15  redefined what students must do "to maintain their F-1 and M-1 nonimmigrant status
16  during the COVID-19 emergency"—i.e., they must appear for in-person instruction
17  "to remain in lawful status" or else "face immigration consequences including, but not
18  limited to, the initiation of removal proceedings." (Doc. 16 at 27-28.)

19        With respect to their due process claim, Plaintiffs showed that they have a
20  cognizable liberty interest in not being arbitrarily subject to removal proceedings, and
21  a cognizable property interest in their visas and the ability to continue the educational
22  endeavors in which they have invested so heavily. (Doc. 16 at 29.) Further, Plaintiffs
23  showed that Defendants have violated Plaintiffs' due process rights by arbitrarily and
24  capriciously issuing a revision to the March Guidance that was not rationally related
25  to mitigating the spread of the coronavirus, was not justified by changing conditions,
26  and that was issued after schools and students such as Plaintiffs had already
27  committed to their plans for the 2020-2021 academic year. (Doc. 16 at 29-30.)

28        In the face of Plaintiffs' showing they are likely to prevail on the merits of their

claims for violations of the APA and the Due Process Clause, Defendants offer no contrary argument whatsoever. Defendants do not dispute that Plaintiffs have legitimate reliance interests and due process rights against arbitrary changes to the March Guidance. Nor do Defendants even attempt to rebut Plaintiffs' showing that Defendants violated those rights by abandoning the March Guidance despite the fact that the coronavirus emergency continues and indeed, has worsened.[4]

Accordingly, for the mootness analysis, this Court must accept as true the validity of Plaintiffs' reliance, liberty and property interests, the importance of allowing online instruction for the duration of the emergency, and the need to follow notice-and-comment procedures prior to any rule revoking the allowance. As further explained below, Defendants' "rescission" of the July 6 Guidance is merely a temporary cessation of the offending conduct underlying Plaintiffs' claims and does not moot the action.

## II. The Action Is Not Moot Because Defendants Have Failed To Meet Their Heavy Burden to Demonstrate They Cannot Simply Reinstate the Policy.

It is well settled that the "voluntary cessation of a challenged conduct does not ordinarily render a case moot because dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox*, 567 U.S. at 307; *see also, e.g.*, *Fikre,* 904 F.3d at 1037. To show mootness based on their voluntary conduct, Defendants must meet the "heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again." *Fikre,* 904 F.3d at 1037; *see also A.O. v. Cuccinelli,* - F. Supp. 3d. -, No. 19-cv-06151, 2020 WL

---

[4] In a footnote, Defendants assert that the July 6 Guidance was merely a "general statement of policy" and therefore falls under an exception to the APA's notice-and-comment requirements. (Doc. 45 at 13 n.15.) The contention is immaterial as Defendants have not argued for dismissal on the merits. In any event, "courts have long looked to the *contents* of the agency's action, not the agency's self-serving *label*, when deciding whether statutory notice-and-comment demands apply." *Azar* v. *Allina Health Servs.,* 139 S. Ct. 1804, 1812 (2019). An agency rule requiring students, during the pandemic, to attend in-person instruction or face removal is substantive in nature and thus requires notice-and-comment rulemaking. (*See* Doc. 16 at 20-21.)

2097586, at *5 (N.D. Cal. May 1, 2020) (finding no mootness where USCIS and DHS failed to meet their "heavy burden" of demonstrating changed immigration policy could not be reinstated). A voluntary change in an official policy moots an action only when it is "absolutely clear" to the court, considering the procedural safeguards insulating the policy change from "arbitrary reversal" and the government's rationale for its changed practices, that the activity at issue will not reoccur. *See, e.g., Fikre*, 904 F.3d at 1039 (citing cases); *see also Bell v. City of Boise,* 709 F.3d 890, 900 (9th Cir. 2013) ("a case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the provision"); *Professional Beauty Fed. of Cal. v. Newsom,* No. 2:20-cv-04275, 2020 WL 3056126 at *4 (C.D. Cal. June 8, 2020) (challenge to California shut down order due to COVID-19 not mooted by lifting of order where state is "not constrained from later reenacting" restrictions) (citing cases).[5]

Here, Defendants' mootness claim fails for two fundamental reasons:

*First,* Defendants have not even acknowledged, let alone provided any evidence to meet, their "heavy burden" to demonstrate they will not reinstate the policy of requiring international students to leave the country if their schools offer only online courses due to the coronavirus emergency. By its own terms, the July 24 Guidance is limited to the fall semester, without providing any assurances that the March Guidance will continue for the duration of the emergency, or that for the next rule change, Defendants will comply with the requirements of the APA and Due Process. Were the case dismissed, Defendants could abruptly change their policy, without

---

[5] Defendants' reliance on *Board of Trustees of Glazing Health & Welfare Trust v. Chambers* for the standard by which mootness should be evaluated is misplaced, as that case is expressly limited to the "repeal, amendment, or expiration of *legislation*," not the agency policies or directives at issue here. 941 F.3d 1195, 1199 (9th Cir. 2019) (emphasis added); *see also Fikre*, 904 F.3d at 1038 (the "heavy burden" of proving mootness when administrative policies, executive orders, official stances or behaviors are at issue does not apply to statutory changes because the "rigors of the legislative process bespeak finality and not for-the-moment, opportunistic tentativeness") (internal quotations omitted).

explanation, either tomorrow, or the day before the next semester begins, or any day in between that suited the political moment. Defendants have not even tried to show that they cannot or will not do so.

*Second*, the question of mootness is not whether the "precise relief" sought at the time the case was filed is still available; rather, the question is whether there can be "any effective relief." *Earth Island Inst. v. U.S. Forest Serv.,* 442 F.3d 1147, 1157 (9th Cir. 2006), *abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008). While the July 6 Guidance itself may have been rescinded, the Court can and should still provide effective relief to Plaintiffs, as outlined below.

## A.    Defendants Fail to Establish the Conduct at Issue Will Not Reoccur

For several reasons, the fact that Defendants voluntarily deleted the July 6 Guidance, and replaced it with the July 24 Guidance, does not meet their "heavy burden" of showing that the offending conduct will not reoccur.

*First*, the July 24 Guidance, on its face, temporarily preserves the March Guidance only for *the fall term*. It does not state that the March Guidance will continue for the duration of the COVID-19 emergency or until a new rule is issued through notice-and-comment rulemaking. It does not even say what the process or timing will be for issuance of the next Guidance or temporary rule. Indeed, the July 24 Guidance could arguably be read as agreeing only to refrain from issuing a different "temporary final rule" during the fall term, without precluding policy changes by other means. (*See* Doc. 46-1.) But, even then, there are no safeguards to prevent Defendants from changing the guidance *before* the end of the fall term.  Indeed, Defendants' July 23 Brief asserts that SEVP "has warned schools and students that the guidance [SEVP] has issued may be altered or superseded *at any time*." (Doc. 45 at 16. (emphasis added)).  And the fact that the July 24 Guidance itself states it will remain in place through the fall semester offers no greater assurance than the March Guidance apparently did by promising to remain in place throughout the duration of

1    the emergency.

2           Even assuming the July 24 Guidance were to remain in place for the full fall

3    term, Plaintiffs have just as strong reliance interests at stake for the spring term as they

4    do for the fall term, including with respect to housing and financial planning, health

5    and health insurance, family planning, the need to continue their education and secure

6    related training opportunities, and the distress inherently caused by being threatened

7    with removal due to circumstances entirely beyond their control. It is inevitable that

8    Defendants will have to revisit what to do for the next term in just a few months, yet

9    there are no assurances that Defendants will adequately consider these reliance

10   interests, engaged in reasoned decision making, or provide sufficient notice and

11   opportunity to comment. Nothing is stopping Defendants from waiting until

12   December to re-issue, in effect, the same Guidance as the July 6 Guidance. Thus,

13   Plaintiffs remain at risk of being forced to leave the country in the middle of the

14   school year even if the health crisis continues and in-person instruction cannot safely

15   resume. When a voluntary change in policy is only temporary and Defendants have

16   kept the door open to "return to [their] old ways," Plaintiffs' claims are not moot. *See*

17   *Clavo v. Zarrabian,* No. SACV03864, 2004 WL 3709049 at *4 (C.D. Cal. May 17,

18   2004); *see also Fikre,* 904 F.3d at 1041 (rejecting mootness claim where government

19   failed to present evidence renouncing its "prerogative and authority" to reinstate

20   policy).

21          *Second*, courts typically require, as evidence that the challenged conduct will

22   not be repeated, an explanation of the government's rationale for its changed

23   practices, including some acknowledgment of why the prior action was objectionable

24   and that the concerns have been fully addressed. *See, e.g., Fikre,* 904 F.3d at 1039-40

25   (action not moot where policy change is "untethered to any explanation or change in

26   policy"); *Bell,* 709 F.3d at 900 (change of policy does not moot claim where it fails to

27   "fully address" plaintiff's challenges to policy); *Norman-Bloodsaw v. Lawrence*

28   *Berkeley Lab, et al.*, 135 F.3d 1260, 1274 (9th Cir. 1998) (rejecting mootness where

14

Department of Energy and contracted government laboratory did not "offer[] any reason why they might not return in the future to [the challenged policy]"); *Cuccinelli*, 2020 WL 2097586, at *6 (action not moot where government rescinds immigration policy but fails to "acknowledge why the [rescinded policy] was imposed in the first place or why it was rescinded"). Defendants fail to make this showing because they do not even acknowledge the problems with the July 6 Guidance or how severely they disrupted the reliance interests of students; they instead act as if the July 6 Guidance can just be forgotten. None of the July 24 documents mention the July 6 Guidance, either by name or in substance. They do not attempt to explain what motivated the July 6 Guidance, what the policy reasons were for its rescission, or what policy criteria Defendants will use going forward. (Doc. 46-1, 46-2, 46-3.) Defendants' refusal to provide that explanation—combined with the facially limited effect of the July 24 Guidance—leads ineluctably to the inference that the offending conduct will be repeated.

*Third*, the pretextual manner in which the July 6 Guidance was issued and scattershot way in which it was "rescinded" further underscores the likelihood of future offending conduct. As explained in Plaintiffs' Complaint and TRO Application, Defendants issued the July 6 Guidance without notice and without providing any clear policy rationale. The real motivation was revealed by Acting DHS Secretary Ken Cuccinelli, who effectively admitted that the change was to pressure universities to reopen. (Doc. 1 ¶ 71.) The July 6 Guidance was later rescinded not based on any further policy articulation or in any formal broadcast, but through an announcement made in the in the middle of a court hearing (Doc. 45 at 8) against the backdrop of multiple legal challenges and unfavorable press. In general, where the cessation occurs in the face of a lawsuit, that fact militates against a finding of mootness. *See, e.g., Rosemere Neighborhood Ass'n. v. U.S. Envmt'l. Prot. Agency,* 581 F.3d 1169, 1175 (9th Cir. 2009) (rejecting mootness claim where EPA changed conduct merely to "escape the pitfalls of litigation"); *Clavo*, 2004 WL 3709049, at *4 (rejecting

mootness challenge based, in part, on fact that defendant "failed to change [the] policy until after th[e] case was filed").[6] By neither acknowledging that the July 6 Guidance was unlawful nor providing the Court with evidence to support a finding that they will not repeat the misconduct again, Defendants' deletion of the July 6 Guidance under the pressure of litigation provides no basis to trust that they will act lawfully when issuing its Guidance for the next term, or even during the fall term.

### B.   The Court Can Provide Effective Relief to Plaintiffs

Defendants allege the case is moot because, in light of the rescission of the July 6 Guidance, "there is no basis for the Court to grant Plaintiffs relief." (Doc. 45 at 13.) However, courts have long held that the mootness determination is not based on whether "the precise relief sought at the time the case was filed is still available," but instead is properly focused on whether the Court can provide "any effective relief." *Fikre,* 904 F.3d at 1040 (citing *Earth Island Inst.,* 442 F.3d at 1157, and other cases).

In this case, there remain several ways in which the Court can provide Plaintiffs with "effective relief," in spite of the newly announced "rescission." For example, it could grant Plaintiffs' request for an injunction holding that the July 6 Guidance was unlawful and directing Defendants to administer the Student and Exchange Visitor Program in accordance with the March Guidance throughout the academic year and until such time as the coronavirus crisis abates, unless replaced by a legally sufficient agency rule promulgated through notice-and-comment rulemaking.

Contrary to Defendants' assertions, Plaintiffs do not seek to "freeze a single policy decision in time," (Doc. 45 at 14), but rather, seek to keep the March Guidance in place for the time period promised in that Guidance – the duration of the coronavirus emergency – or until Defendants follow the requirements of reasoned

---

[6] And here, this is an Administration that just days ago was called out for dragging its feet in response to *the Supreme Court's ruling* in the DACA case. *See* https://www.politico.com/news/2020/07/24/judge-faults-trump-administration-response-daca-381380 (regarding *Casa de Maryland v. U.S. Dep't of Homeland Sec.,* No. 8:17-cv-2942-PWG (D. Md.)).

decision making under the APA and the Due Process Clause. Defendants' complete failure even to attempt to satisfy the heavy burden of showing their misconduct will not reoccur means that the threat to Plaintiffs' interests from abrupt, unexplained, callous, and politically motivated agency decision-making clearly remains a live dispute and warrants judicial resolution of the procedures and conditions Defendants must follow in connection with their next Guidance or temporary rule during or following this semester.

Everyone hopes that life will be more normal by January and that in-person instruction will resume. But, that's what everyone was saying in March about June. And, that's what everyone was saying in June about August. So long as the public health crisis continues and in-person instruction cannot safely resume, Plaintiffs will have an interest in continuing their studies in the United States under the March Guidance, free from abrupt, unexplained, politically-motivated policy reversals. Because Defendants have not convincingly foresworn such conduct, the controversy remains a live dispute, this Court can grant Plaintiffs meaningful and important relief, and the case is not moot.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss.

DATED: July 30, 2020

By: /s/ David R. Carpenter*
      Lisa M. Gilford
      David R. Carpenter
      Stacy Horth-Neubert
      Sheri Porath Rockwell
      SIDLEY AUSTIN LLP

By: /s/ Mark D. Rosenbaum
      Mark D. Rosenbaum
      PUBLIC COUNSEL

By: /s/ *Evan Caminker*
   Dean Emeritus and Branch Rickey
   Collegiate Professor of Law
   UNIVERSITY OF MICHIGAN
   LAW SCHOOL**

By: /s/ *Mark E. Haddad*
   USC Gould School of Law
   UNIVERSITY OF SOUTHERN
   CALIFORNIA**

Attorneys for Plaintiffs
Z.W., C.Y, X.Y., A.G., M.X., Z.L., W.R.,
and DOES 1 through 50

* Filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

** University affiliation provided for identification purposes only.

18